Case 1:22-cv-02249-DG-VMS   Document 1   Filed 04/11/22   Page 1 of 9 PageID #: 1

IN THE UNITED STATES DISTRICT
FOR THE EASTERN DISTRICT OF NEW YORK



RECEIVED APR 11 2022 PRO SE OFFICE

| | |
|---|---|
| Elizabeth Garcia,<br>846 Adams Street, Baldwin, NY 11510,<br>Plaintiff-<br>        -against-<br><br>Monalyssa Barnes, Clinical Director of JCAP, Queens Village Committee for Mental Health, in her Personal and Professional Capacity; and,<br>Alfredo Matthews, Operational Director of of JCAP, Queens Village Committee for Mental Health, in his Personal and Professional Capacity; and Jose Rodriguez, Executive Vice President and Chief Legal Officer of ACACIA Network, Inc. the Parent company of JCAP, representing ACACIA network located in the Bronx as a whole business with legal oversight of JCAP and business decisions of above named defendants and Queens Village for Mental Health,<br>Defendants, | **Complaint for a Violation of Civil Rights**<br>(Non-Prisoner Compliant)<br><br>Case No. CV 22-2249<br><br>Jury Trial  <u>Yes</u>      <u>No</u> n/a<br><br>**GUJARATI, J.**<br><br>**SCANLON, M.J.** |

**Parties to This complaint:**

**The Plaintiff,**

Elizabeth Garcia,
846 Adams Street,
Baldwin, Nassau County
New York, 11510
516 776 2219
Lisa071558@yahoo.com

**The Defendants,**

Defendant No. 1
Monalyssa Barnes,
Clinical Director of JCAP, Queens Village
Committee for Mental Health, in her personal
and professional capacity

116-30 Sutphin Blvd

Jamaica, Queens
New York, 11434
718 322 2500

Defendant No. 2
Alfredo Matthews, Operational
Director of JCAP, Queens Village
Committee for Mental Health, in his
Personal and Professional Capacity,
116-30 Sutphin Blvd.
Jamaica Queens
New York, 11434
718 322 2500

Defendant No. 3
Jose Rodriguez, Executive Vice President
And Chief Legal Officer, of the ACACIA
Network, in his personal and professional
Capacity, representing ACACIA network as
an incorporated business and responsible for
the decisions of the above-named defendants and
ACACIA network as a whole,
300 East 175th Street,
Bronx, Bronx County
New York 10457
718 299 1100

**Basis for jurisdiction:**

**42 U.S.C. 1983, and 1964 Civil Rights Act**

First, please take note; Plaintiff is a civilian with no legal training and has only prepared this from forms from the court, other places, and reading civil rights violations on record. Accordingly, plaintiff respectfully requests a liberal interpretation of this action.

Two: The Civil Rights Act of 1964 made it illegal for employers to discriminate against employees based on amongst other things **"sex."**

Three: The above-named defendants created and condoned a hostile workplace for plaintiff who was a long term female counselor, which they allowed and created to drive out plaintiff.

Four: Title 7 of the Civil Rights Act of 1964 includes language that made sexual harassment in the workplace illegal.

Five: Plaintiff was eventually terminated after 7 years of service when ACACIA network became, in about 2019, the parent company of JCAP, and because plaintiff was a female counselor in a all-male facility that used to be "male and female," but ACACIA Inc. changed that to an all-male facility in about April 2020.

Six. Defendants can also be considered acting under color of State and local laws inasmuch as JCAP, Queens Village Committee for Mental Health, and ACACIA network, may only operate with permission of New York State, OASAS (Office of Addiction and Substance Abuse Services) which mandates and controls the rules and regulations of said defendants, and, further, plaintiff actually had to enter into a "physical contract" about July 2019 with said defendants as described by the "New York City Commission on Human Rights," (STOP SEXUAL HARRASMENT.) Here it is defendants who violated their own contract as the language works both ways.

**Statement of Claim**

   A. The events giving rise to this action occurred at JCAP, Queens Village Committee for Mental Health (hereinafter JCAP,) 116-30 Sutphin Blvd, Jamaica New York 11434. JCAP _**had been a**_ 192 (one-hundred ninety-two) bed in-patient rehabilitation facility for treatment of drug and alcohol addiction, which, before the pandemic and amongst other things, was both a "male" and "female" facility. More, in and about 2019 the New York State Office of Addiction and Substance Abuse Services (hereinafter OASAS) was NOT renewing JCAP's "operating contract" and was shutting down the facility for alleged corruptions of protocol; and, ACACIA, (named defendant,) to obtain the 12,000,000.00 million dollars would be contract, solely withheld by Robert Kent of OASAS, ACACIA, to gain these funds, obtaining the available, and receiving, the 12 million dollars of the normal contract, ACACIA partnered with JCAP in hopes of obtaining said monies by rescuing the facility, and; all the alleged past violations of protocol were then remedied. Nevertheless, it still took a Supreme Court Action by a few employees to force the renewal of the OASAS contract and JCAP, unlike the preceding year, was once again permitted to open their "intake department" taking in "new residents." The 12 million was granted to ACACIA. This occurred, upon information and belief, around April of 2020 during a height of covid transmission in New York. Accordingly, by approximately May 2020, there was then, out of 192 beds, only 30 residents. And these, ACACIA only admitted "males" to the facility. JCAP was now designated an "all-male facility."
   B. The dates giving rise to this claim began November 2020 and continued every day until the discriminatory termination of plaintiff's employment on November 1st, 2021.

3

C. Facts: Plaintiff is a well kept 63 year old Hispanic female and certified addiction "counselor" for over 7 (seven) years. Part of a certified counselors' duty is to meet with residents in an "I.C." session. (individual-counseling session) where residents to the program, who are supposed to be in "recovery," sometimes don't appreciate having to come to a confidential office in the first place, and become obnoxious and rebellious to the addiction advice a counselor has to offer and curse and storm out. This is a common occurrence in the beginnings of recovery. A counselor, no matter who, then creates "progress notes in the residents chart."

D. Here, in particular, in and about November 2020, two male residents were admitted to JCAP, a Sigfredo M. and a Marquis S. These two fairly young residents, and fast friends, had been admitted and now a part of 30 (thirty) residents admitted during a height of the pandemic, were, notably, were not there for recovery, but only for the room and board JCAP had to offer. Said residents treated JCAP as a motel. JCAP had specific times and rules for "store runs" and these residents would, "without permission" walk in and out of the facility at any time they pleased.

E. When these residents were respectfully confronted by plaintiff working the front desk at the time, that they were non-compliant to the program, they said things like "suck my #### bit##," and gave plaintiff the finger. All this was witnessed by two other counselors who will not be named here at this time because I fear upon service of this suit there would be retribution against those witness's who remain employed at JCAP.

F. This "non-isolated" incident was reported to not only these said residents assigned male counselors, but to defendants Ms. Barnes and Alfredo Matthews. Although there is a code of conduct with language to protect counselors from this type of behavior, the clinical director and operational director, defendants, did **absolutely nothing** leading to a ***hostile work environment.*** (It is also believed defendants may have deleted many of plaintiff's notes.) Plaintiff was thereafter verbally abused being called a "rat."

G. Worse, as there were no consequences, these two said residents upped their bad behavior against plaintiff. Part of plaintiff's responsibility for over 7 (seven) years was to do "room runs" around 10 am. Respectfully knocking on resident's door to confirm compliance. Never having a problem. JCAP has "room standards" which "contract" residents sign upon admission, and, part of recovery is learning how to make your bed and fold your clothes in the dresser. Here, when respectfully entering Marquis S's

4

room, he stood there <u>exposing himself.</u> Plaintiff immediately left disgusted and continued on her rounds. A few doors down plaintiff came to Sigfredo's room, respectfully knocking and entering, and he too stood there <u>exposing himself.</u> Plaintiff again immediately left disgusted. Plaintiff was now in fear of these two residents.

H. Plaintiff entered all these behaviors into progress notes on her computer (which is now in custody of defendants.) Some of which notes are believed to be deleted by defendants. A witness who remains employed there attested to this fact.

I. Plaintiff again reported these disgusting behaviors to Monalyssa Barnes, clinical director and Alfredo Matthews operational director. Again, nothing was done. Back when JCAP was only JCAP and run by different director, these two would have been immediately discharged.

J. Instead, ACACIA, Alfredo Matthews, and Ms. Barnes, apparently had some kind of hidden agenda to keep these 30 residents acquired at the height of the pandemic, and Ms. Barnes notably "close" with Marquis, as Marquis walked by Plaintiff and one day said "I'll have you fired you dumb bit###." I was no longer freely allowed to do "room runs," and after over 7 years, I was reglated to my office with only a few things to do. Nonetheless, I was still assigned a few mild male residents, and was also kept busy assisting with kitchen duties, and monitoring the first floor outside my office. I was no longer allowed to work front desk unless specifically asked by defendants and then instructed not to cause problems allowing said two residents and others "free reign."

K. Furthermore for example, some obnoxious residents unhappy in treatment poison a counselor's character know how to call the N.Y. "Justice Center" and make false complaints. These two said residents had coordinated and enlisted an effort to report false accusations and report Plaintiff to the Justice Center once or twice a week. This has always been a sporadic occurrence to myself and many other counselors in the past; and in other programs. Here, however; unlike responsible investigation, the Justice Center only spoke with defendants, and defendant's took no action to seek the truth instead they became more hostile to plaintiff.

L. Plaintiff was in the midst of a very "**hostile environment**" and scared for herself.

M. Whether or not complaints to the "Justice Center" have merit or not they still get back to the directors to determine what's going on.

N. Here, with all the complaints; reports; and documentations made by plaintiff in the hard drives of the JCAP computers, progress notes, the log books, many witnesses, one of whom was a House Manager that retired and not in fear of being named, Dana Springs, can attest to these facts being recorded by plaintiff and to the legal documents of the front desk log books where all incidents are to be reported which was dutifully done by plaintiff. That no assistance was rendered to plaintiff instead accusing plaintiff.

O. By October of 2021 plaintiff was informed by defendants Ms. Barnes and Alfredo Matthews that she was the problem, and more or less as a female no longer welcome into the new JCAP model of an all-male facility due to the now tension between said males. To NOT create more problems. And, after over ~~20~~ SEVEN years plaintiff had "vacation time"

P. Plaintiff in fear and totally stressed took a two-week vacation. Plaintiff left on October 16th, 2021 and was due back on October 29, 2021. The day prior of October 29th, defendant Barnes phoned plaintiff and told plaintiff not to report back to work but to instead report to ACACIA headquarters in the Bronx on November 1st, 2021. Plaintiff complied with these instructions. Once there, plaintiff was basically informed she was "no longer good for business" and was discriminatorily terminated from employment at JCAP.

Q. Plaintiff was not permitted on JCAP grounds to retrieve files from her personal computer nor copy entries she made over the year in the official log book of occurrences in the facility front desk.

R. Plaintiff contends a summary judgment is premature at this time in that all evidences of plaintiff's most all of the claims are now in the sole care and custody of defendants, and is only available through "discovery."

**Injuries:** Injuries were also discriminatory in nature. For an entire year plaintiff suffered from horrendous sexual harassment with no assistance from defendants. Every day plaintiff would worry what these male residents would come up with next and defendants instead of investigating, condoned sexual harassment. Plaintiff was thrust into a now "hostile environment" with no relief in sight although all was documented and duly reported by plaintiff as it occurred. Plaintiff was unjustly removed from her prior responsibilities and mostly sidelined as a result. Plaintiff was made to **feel like a leper**. The ultimate injury was when plaintiff was terminated for being a

"female" in an all- male facility and "bad for business." Defendants have knowingly broken many federal laws and rules. These laws and rules are posted in the counselors' bill of rights and federal discrimination laws posted on the corkboard of the first floor of JCAP. Defendants must be held accountable.

**Relief:** Plaintiff seeks $2,000,000,000.00 (two million) dollars which includes lost income but most of all punitive damages for the foul things defendants condoned. Punitive damages would serve to correct ACACIA and named defendant's thinking and future reactions in these matters and not let this happen again to others similarly situated. The relief would be just.

**Certification and Closing:**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase cost of litigation; (2)is supported by existing law or by non-frivolous argument for extending, modifying, or reversing existing law: (3) the factual contentions have evidentiary support or, if specifically so identified will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**For Parties without an Attorney;**

A. I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of Signing: _April 4_, 2022.

Signature of Plaintiff: _Elizabeth Garcia_

Printed Name of Plaintiff: _Elizabeth Garcia_

end

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ APR 11 2022 ★

BROOKLYN OFFICE



Pro Se Office
Clerk of the Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Elizabeth Garcia
846 Adams Street
Baldwin, NY 11510

April 4, 2022
Re: Garcia v Defendants

Dear Clerk of the Pro Se Office,

Greetings. Would you please most respectfully process the papers found herein. In addition, I believe the papers are in order to be filed. If not, please get back to me on any corrections.

    I have included 4 copies of the complaint. One can be considered an original but in fact all are originals off my printer. I have included in forma pauperis.

    Thank you for your time and effort.

Respectfully,

*Elizabeth Garcia*
Elizabeth Garcia

Elizabeth Garcia
846 Adams St
Baldwin N.Y. 11510

CERTIFIED MAIL
7021 1970 0002 1627 1972

U.S. POSTAGE PAID
FCM LG ENV
LYNBROOK, NY 11563
APR 06, 22
AMOUNT $8.96
R2303S104129-16

Attn: Pro Se Office
Clerk of the Court
Eastern District of New York
225 Cadman Plaza East
Bklyn N.Y. 11201

